UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISON

| | |
|---|---|
| ROBIN TRUPP, Ph.D., )<br>)<br>   Plaintiff, )<br>)<br>   v. )<br>)<br>ROCHE DIAGNOSTICS )<br>CORPORATION, )<br>)<br>   Defendant. ) | CAUSE NO.: 1:18-cv-02587 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Robin Trupp, Ph.D. ("Trupp"), by counsel, files this Complaint and Demand for Jury Trial against her employer, Roche Diagnostics Corporation ("Roche").

**I.    PARTIES, VENUE, AND JURISDICTION**

1. Trupp is employed by Roche.

2. Roche is a domestic corporation incorporated under the laws of the State of Indiana and has its principal place of business in Indianapolis, Indiana.

3. This Court has subject matter jurisdiction over Trupp's claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2601 *et seq.*, and 31 U.S.C. § 3721 *et seq.*

4. This Court has personal jurisdiction over Roche.

5. Venue is proper pursuant to 28 U.S.C. § 1391 in that Roche is subject to personal jurisdiction in the Southern District of Indiana, Roche employs Trupp in the Southern District of Indiana, Roche regularly conducts business activities within the Southern District of Indiana, and a substantial part of the events giving rise to the claims occurred in the Southern District of Indiana.

## II.     FACTUAL ALLEGATIONS

6.     Trupp hereby incorporates by reference all other paragraphs of this Complaint as fully set forth here.

7.     Roche is a manufacturer of medical devices which are sold and marketed under regulatory oversight from the United States Food and Drug Administration ("FDA").

8.     Roche manufactures medical laboratory devices and the associated immunoassays (blood tests) used by medical providers in the evaluation and management of cardiac diseases, including myocardial infarction (heart attack).

9.     Trupp obtained her Bachelor's Degree in Nursing from Miami University (OH), her Master's Degree in Nursing from the University of Cincinnati, and her Ph.D. in Nursing from The Ohio State University. She is board-certified as an Acute Care Nurse Practitioner by the American Nurses Credentialing Corporation and has received Fellowship status within the American Heart Association and the Heart Failure Society of America. She has over 40 years of clinical experience and expertise in managing adults with cardiac diseases in acute care and outpatient settings.

10.     Since July of 2015, Roche has employed Trupp as the Director of Medical and Scientific Affairs, Cardiac.

11.     In this role, Trupp directs a team of 10 medical and scientific professionals and is responsible for scientific engagements and medical education to hospitals and medical providers. Trupp manages an annual operating budget of ███████. Trupp provides medical and scientific expertise for product development and subsequent product introduction into the U.S. market.  Trupp serves as the U.S. liaison to Roche's Global Clinical and Medical groups to identify and implement collaborative studies, regulatory activities and other programs.

12. As Director of Medical and Scientific Affairs, Trupp reports directly to Dr. Chris Bird, Head of U.S. Medical & Scientific Affairs. Bird reports to Dr. Alan Wright, Chief Medical Officer for Roche (U.S.).

13. In February of 2018, a Roche employee working under Trupp's supervision expressed potential concerns to Trupp about a Roche immunoassay.

14. The assay, known as ▮▮▮▮▮, received clearance from the Food and Drug Administration ("FDA") in January 2017 for use on the Roche ▮▮▮▮▮. Per the FDA 510k summary, ▮▮▮▮▮ Clinical performance of the assay was evaluated ▮▮▮▮▮ as recommended by the most recent American Heart Association/American College of Cardiology heart attack guidelines.

15. The reported concern was that Roche was not being transparent about the fact that the ▮▮▮▮▮

16. The ▮▮▮▮▮, which would change ▮▮▮▮▮ as compared to ▮▮▮▮▮. The ▮▮▮▮▮ are often different ▮▮▮▮▮, as compared to ▮▮▮▮▮.

17. On February 9, 2018, Jane Phillips, the Senior Regulatory Program Manager for Roche, sent an email to Dr. Carmen Wiley (Regional Manager, Medical & Scientific Affairs), Dr. Ursula Klause (Sr. Scientific Affairs Manager, Medical & Scientific Affairs), Dr. Jonathan

3

Respress (Medical & Scientific Liaison), and Joshua Soldo (Medical & Scientific Liaison), which stated in part, that ▮

18. Roche has communicated ▮ but Roche has not provided data to support that this is true and accurate, despite multiple requests from Trupp and her direct report over a span of months.

19. Roche was aware that its customers were using the ▮

20. The differences in ▮ is critical because the FDA has approved the assay for aiding in the diagnosis of a myocardial infarction where measurements are made ▮ The differences in the measurements at these time intervals can aid in the diagnosis of myocardial infarction. However, if the different ▮. If ▮ there may be an increased risk of missing a diagnosis of myocardial infarction.

21. Trupp recognized the significance and validity of these concerns, and she and her direct report met with and communicated these concerns to Steve Oldham, Roche's Vice President for Law & Ethics Compliance and General Counsel, on March 7, 2018.

4

22. On March 14, 2018, Dr. Ursula Klause (Sr. Scientific Affairs Manager, Medical & Scientific Affairs) sent an email to Joshua Soldo (Medical & Scientific Liaison), Jennifer Evanczyk (Associate Marketing Manager), Jim Dodds (Technical Marketing Manager), and Christen Mello (Group Marketing Manager) which stated in part:



23. The majority of U.S. hospitals that have implemented Roche's assay are doing so in an "off-label" manner, ███████████████████████████████████ ███, for reasons which are not medically necessary, when treating recipients of Medicare and/or Medicaid, and have accepted Medicare and/or Medicaid payments from the U.S. for such off-label use.

24. Trupp reported to Oldham that off-label use of the assay in question is the prevailing and growing utilization of the product.

25. During their meeting on March 7, 2018, Oldham informed Trupp and her colleague that they had done the right thing in reporting this issue and reassured them they would be protected from potential retaliation.

26. Later in the day on March 7, 2018, Trupp and her colleague had a meeting with Chief Medical Officer Wright, at Oldham's urging. Wright instructed Trupp to convene a small group to share the issue as soon as possible. When asked specifically about who should be invited, Wright stated that Regulatory Affairs need not be included because there were no

regulatory concerns. This group meeting occurred on March 22, 2018, where Trupp and her direct report led the discussion and presented a PowerPoint presentation.

27.     On March 29, 2018, Trupp received a phone call from Roche's Regulatory Affairs group, who falsely accused Trupp of accusing the Regulatory Affairs group of fraudulent activities with the FDA. Trupp immediately reported this call to Oldham.

28.     Beginning in April of 2018 and thereafter, Roche personnel repeatedly excluded Trupp from meetings, ignored her on conference calls and failed to respond to her emails. In those meetings which she did attend, colleagues ignored her, refused to respond when she spoke to them, raised their voices at her, and generally ostracized Trupp. Bird repeatedly asked Trupp how she was going to "fix [her] problems with Regulatory Affairs."

29.     On April 18, 2018, Trupp complained to Oldham that Roche was retaliating against her. On April 27, 2018, Oldham initiated an internal investigation regarding Trupp's complaints of retaliation.

30.     On June 12, 2018, Roche notified Trupp that it had completed its internal investigation of Trupp's retaliation complaint and informed Trupp that although certain individuals had "definitely behaved badly," "no violation" of company policy had occurred.

31.     The constant harassment and retaliation which occurred in the workplace made Trupp physically and emotionally ill, requiring medical leave for her serious medical condition. Trupp was on approved FMLA leave from July 9, 2018, through August 10, 2018.

32.     Trupp returned to work from FMLA on August 13, 2018.

33.     On Trupp's first day back at work, a director level colleague informed Trupp that during her medical leave, Bird had asked that colleague if she wanted Trupp's job.

### III. LEGAL ALLEGATIONS

### COUNT I: FALSE CLAIMS ACT RETALIATION

34. Trupp hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

35. Trupp engaged in protected activity through her efforts to stop one or more violations of the False Claims Act, including, but not limited to, her internal reporting of concerns related to off-label use of regulated medical devices to Oldham on March 7, 2018, and in follow up meetings, email communications and telephone calls up to and including the time of this filing.

36. Roche was aware of Trupp's protected activity and the company's lead in house lawyer personally assured her that she would be protected from retaliation.

37. Trupp has suffered adverse employment actions, including, but not limited to, harassment, threats to demote or terminate her employment, reassignment of responsibilities and duties away from her, and other retaliation adversely affecting the terms and conditions of her employment.

38. A causal connection exists between Trupp's protected activities and Roche's adverse employment actions against her.

39. Trupp has suffered damages as a result of Roche's retaliation.

### COUNT II: FMLA RETALIATION

40. Trupp hereby incorporates by reference all other paragraphs of this Complaint as fully set forth here.

41. Trupp engaged in protected activity under the FMLA by applying for and obtaining medical leave under the FMLA.

42. Roche was aware of Trupp's exercise of her FMLA rights.

43. During Trupp's FMLA leave, Roche interfered with, restrained, or otherwise discriminated against Trupp, including but not limited to offering her job to another Roche employee.

44. During Trupp's FMLA leave, Roche interfered with, restrained, or otherwise discriminated against Trupp, including but not limited to Trupp's boss texting and emailing her ordering her to perform work while she was on approved medical leave.

45. Roche's unlawful actions were intentional, willful, and done in reckless disregard of Trupp's statutorily protected rights.

## IV. RELIEF REQUESTED

Trupp requests the following relief:

a. All wages and other economic benefits lost as a result of Roche's unlawful actions, including, but not limited to, two times the amount of back pay, front pay, employment related fringe benefits, and loss of future earning capacity;

b. Compensatory damages;

c. Special damages, including damages to compensate Trupp for mental anguish, pain and suffering, and emotional distress;

d. Liquidated damages and/or punitive damages;

e. All costs and reasonable attorneys' fees incurred in litigating this action;

f. Pre-judgment and post-judgment interest; and

g. Any and all other legal and/or equitable relief to which Trupp is entitled.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*_____
Kathleen A. DeLaney (#18604-49)
Christopher S. Stake (#27356-53)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205

*Attorneys for Plaintiff Robin Trupp*

## JURY DEMAND

Plaintiff, Robin Trupp, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*_____
Kathleen A. DeLaney (#18604-49)
Christopher S. Stake (#27356-53)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205

*Attorneys for Plaintiff Robin Trupp*