UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISON

| | |
|---|---|
| ROBIN TRUPP, Ph.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:18-cv-02587-SEB-DLP |
| ) | |
| ROCHE DIAGNOSTICS ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Robin Trupp, Ph.D. ("Trupp"), by counsel, files this First Amended Complaint and Demand for Jury Trial against her employer, Roche Diagnostics Corporation ("Roche").

**I.     PARTIES, VENUE, AND JURISDICTION**

1. Trupp is employed by Roche.

2. Roche is a domestic corporation incorporated under the laws of the State of Indiana and has its principal place of business in Indianapolis, Indiana.

3. This Court has subject matter jurisdiction over Trupp's claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2601 *et seq.*, and 31 U.S.C. § 3721 *et seq.*

4. This Court has personal jurisdiction over Roche.

5. Venue is proper pursuant to 28 U.S.C. § 1391 in that Roche is subject to personal jurisdiction in the Southern District of Indiana, Roche employs Trupp in the Southern District of Indiana, Roche regularly conducts business activities within the Southern District of Indiana, and a substantial part of the events giving rise to the claims occurred in the Southern District of Indiana.

1

## II. FACTUAL ALLEGATIONS

6. Trupp hereby incorporates by reference all other paragraphs of this Complaint as fully set forth here.

7. Roche is a manufacturer of medical devices which are sold and marketed under regulatory oversight from the United States Food and Drug Administration ("FDA").

8. Roche manufactures medical laboratory devices and the associated immunoassays (blood tests) used by medical providers in the evaluation and management of cardiac diseases, including myocardial infarction (heart attack).

9. Trupp obtained her Bachelor's Degree in Nursing from Miami University (OH), her Master's Degree in Nursing from the University of Cincinnati, and her Ph.D. in Nursing from The Ohio State University. She is board-certified as an Acute Care Nurse Practitioner by the American Nurses Credentialing Corporation and has received Fellowship status within the American Heart Association and the Heart Failure Society of America. She has over 40 years of clinical experience and expertise in managing adults with cardiac diseases in acute care and outpatient settings.

10. From July of 2015 to August 31, 2018, Roche employed Trupp as the Director of Medical and Scientific Affairs, Cardiac.

11. Before Roche placed Trupp on administrative leave, Trupp's role as Director of Medical and Scientific Affairs, Cardiac, included directing a team of 10 medical and scientific professionals, as well as being responsible for scientific engagements and medical education to hospitals and medical providers. Trupp managed an annual operating budget of ▮▮▮▮▮▮. Trupp provided medical and scientific expertise for product development and subsequent product introduction into the U.S. market. Trupp served as the U.S. liaison to Roche's Global Clinical

and Medical groups to identify and implement collaborative studies, regulatory activities and other programs.

12. As Director of Medical and Scientific Affairs, Trupp reported directly to Dr. Chris Bird, Head of U.S. Medical & Scientific Affairs. Bird reports to Dr. Alan Wright, Chief Medical Officer for Roche (U.S.).

13. In February of 2018, a Roche employee working under Trupp's supervision expressed potential concerns to Trupp about a Roche immunoassay.

14. The assay, known as ▮▮▮▮▮ received clearance from the Food and Drug Administration ("FDA") in January 2017 for use on the Roche e411 ▮▮▮▮▮ Per the FDA 510k summary, ▮▮▮▮▮ Clinical performance of the assay was evaluated ▮▮▮▮▮ as recommended by the most recent American Heart Association/American College of Cardiology heart attack guidelines.

15. The reported concern was that Roche was not being transparent about the fact that the ▮▮▮▮▮

16. The ▮▮▮▮▮ which would change the ▮▮▮▮▮ as compared to ▮▮▮▮▮ The ▮▮▮▮▮ are often different ▮▮▮▮▮, as compared to ▮▮▮▮▮.

17. On February 9, 2018, Jane Phillips, the Senior Regulatory Program Manager for Roche, sent an email to Dr. Carmen Wiley (Regional Manager, Medical & Scientific Affairs),

3

Dr. Ursula Klause (Sr. Scientific Affairs Manager, Medical & Scientific Affairs), Dr. Jonathan Respress (Medical & Scientific Liaison), and Joshua Soldo (Medical & Scientific Liaison), which stated in part, that ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

18. Roche has communicated ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅, but Roche has not provided data to support that this is true and accurate, despite multiple requests from Trupp and her direct report over a span of months.

19. Roche was aware that its customers were using ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

20. The differences in ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ is critical because the FDA has approved the assay for aiding in the diagnosis of a myocardial infarction where measurements are made ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ The differences in the measurements at these time intervals can aid in the diagnosis of myocardial infarction. However, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ there may be an increased risk of missing a diagnosis of myocardial infarction.

21. Trupp recognized the significance and validity of these concerns, and she and her direct report met with and communicated these concerns to Steve Oldham, Roche's Vice President for Law & Ethics Compliance and General Counsel, on March 7, 2018.

22. On March 14, 2018, Dr. Ursula Klause (Sr. Scientific Affairs Manager, Medical & Scientific Affairs) sent an email to Joshua Soldo (Medical & Scientific Liaison), Jennifer Evanczyk (Associate Marketing Manager), Jim Dodds (Technical Marketing Manager), and Christen Mello (Group Marketing Manager) which stated in part:



23. The majority of U.S. hospitals that have implemented Roche's assay are doing so in an "off-label" manner, ▇▇▇ for reasons which are not medically necessary, when treating recipients of Medicare and/or Medicaid, and have accepted Medicare and/or Medicaid payments from the U.S. for such off-label use.

24. Trupp reported to Oldham that off-label use of the assay in question is the prevailing and growing utilization of the product.

25. During their meeting on March 7, 2018, Oldham informed Trupp and her colleague that they had done the right thing in reporting this issue and reassured them they would be protected from potential retaliation.

26. Later in the day on March 7, 2018, Trupp and her colleague had a meeting with Chief Medical Officer Wright, at Oldham's urging. Wright instructed Trupp to convene a small group to share the issue as soon as possible. When asked specifically about who should be invited, Wright stated that Regulatory Affairs need not be included because there were no

regulatory concerns. This group meeting occurred on March 22, 2018, where Trupp and her direct report led the discussion and presented a PowerPoint presentation.

27.     On March 29, 2018, Trupp received a phone call from Roche's Regulatory Affairs group, who falsely accused Trupp of accusing the Regulatory Affairs group of fraudulent activities with the FDA. Trupp immediately reported this call to Oldham.

28.     Beginning in April of 2018 and thereafter, Roche personnel repeatedly excluded Trupp from meetings, ignored her on conference calls and failed to respond to her emails. In those meetings which she did attend, colleagues ignored her, refused to respond when she spoke to them, raised their voices at her, and generally ostracized Trupp. Bird repeatedly asked Trupp how she was going to "fix [her] problems with Regulatory Affairs."

29.     On April 18, 2018, Trupp complained to Oldham that Roche was retaliating against her. On April 27, 2018, Oldham initiated an internal investigation regarding Trupp's complaints of retaliation.

30.     On June 12, 2018, Roche notified Trupp that it had completed its internal investigation of Trupp's retaliation complaint and informed Trupp that although certain individuals had "definitely behaved badly," "no violation" of company policy had occurred.

31.     The constant harassment and retaliation which occurred in the workplace made Trupp physically and emotionally ill, requiring medical leave for her serious medical condition. Trupp was on approved FMLA leave from July 9, 2018, through August 10, 2018.

32.     Trupp returned to work from FMLA on August 13, 2018.

33.     On Trupp's first day back at work, Corinne Fantz, a director level colleague, informed Trupp that during Trupp's medical leave, Bird had asked Fantz if she wanted Trupp's job.

34. Trupp filed this lawsuit on August 22, 2018.

35. On August 22, 2018, at 10:48 a.m. Oldham sent an email confirming that he received an email message attaching a courtesy copy of Trupp's Complaint in this case.

36. On or about August 31, 2018, Bird told Trupp that he had "received disturbing feedback" about Trupp from four Roche customers who had "specifically called out [Trupp's] behavior and attitude towards them."

37. On or about August 31, 2018, Bird told Trupp that Roche had "decided to put [Trupp] on administrative leave for the short term."

38. On August 31, 2018, Roche terminated Trupp's access to company email, company credit card, company travel account, disabled her company cell phone, and terminated all access to company files. Bird informed Roche employees via email that Trupp was on administrative leave and instructed them not to contact her.

39. On August 31, 2018, Roche deactivated Trupp's company email account such that anyone sending her an email message received a bounce back reply stating "[y]our message wasn't delivered to [robin.trupp@roche.com](robin.trupp@roche.com) because the address couldn't be found, or is unable to receive mail."

40. Roche kept Trupp on paid administrative leave from August 31, 2018, to December 3, 2018.

41. During the entire period of paid administrative leave, Trupp had no work to perform, had no supervisory authority for her employees, could not communicate with co-workers, and was not allowed on company property.

42. On or about November 14, 2018, Wright contacted Trupp about a potential job offer from Roche. Trupp spoke with Wright about this potential position on November 15, 2018.

7

43. Wright told Trupp on November 15, 2018, that the position had no job description, that it had not been posted, and that Trupp was the only person being considered for the role.

44. Wright officially offered Trupp the position of "Director – Medical Access" on November 16, 2018.

45. The position of "Director – Medical Access" is a newly created position.

46. According to Roche's Employment Policy, Internal Job Posting, "[t]o be eligible to apply for an open position, an employee must…not currently [be] on any form of written counseling or Performance Improvement Plan."

47. Wright told Trupp on November 15, 2018 that she was not on a Performance Improvement Plan; otherwise she wouldn't be eligible for the job offer. Wright said it was a "clean slate solution to get [Trupp] out of global affiliate dynamic issues."

48. Roche did not follow its Internal Job Posting policy stating "all jobs below the VP level are posted internally" and "should be posted for a minimum of five days."

49. Wright represented to Trupp that the position of "Director – Medical Access" was part of Medical and Scientific Affairs and would be at the same level as her prior position.

50. The position of Director – Medical Access has no direct reports.

51. Trupp accepted the position of Director – Medical Access on November 30, 2018. Trupp's assignment to this position began on December 3, 2018.

52. Since returning to work, Trupp has been instructed to work in a different area, isolated from her colleagues.

53. Since Trupp's return to work, Trupp's colleagues have told her that they have been instructed not to talk to her.

54. Since returning to work, Roche has continued to exclude Trupp from Medical and Scientific Affairs meetings and activities.

55. The position of Director – Medical Access is not substantially equivalent to her prior position of Director of Medical and Scientific Affairs, Cardiac because, among other things, it has no direct reports, no budget, no liaison role, and has significantly diminished job duties and responsibilities.

### III. LEGAL ALLEGATIONS

### COUNT I: FALSE CLAIMS ACT RETALIATION

56. Trupp hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

57. Trupp engaged in protected activity through her efforts to stop one or more violations of the False Claims Act, including, but not limited to, her internal reporting of concerns related to off-label use of regulated medical devices to Oldham on March 7, 2018, and in follow up meetings, email communications and telephone calls up to and including the time of this filing. Trupp further engaged in protected activity by filing this lawsuit on August 22, 2018.

58. Roche was aware of Trupp's protected activities and the company's lead in house lawyer personally assured her that she would be protected from retaliation.

59. Trupp has suffered adverse employment actions, including, but not limited to, harassment, threats to demote or terminate her employment, reassignment of responsibilities and duties away from her, placement on administrative leave, demotion to a lesser position after being returned from administrative leave, and other retaliation adversely affecting the terms and conditions of her employment.

60. A causal connection exists between Trupp's protected activities and Roche's adverse employment actions against her.

61. Trupp has suffered damages as a result of Roche's retaliation.

## COUNT II: FMLA RETALIATION

62. Trupp hereby incorporates by reference all other paragraphs of this Complaint as fully set forth here.

63. Trupp engaged in protected activity under the FMLA by applying for and obtaining medical leave under the FMLA. Trupp further engaged in protected activity by filing this lawsuit on August 22, 2018.

64. Roche was aware of Trupp's exercise of her FMLA rights.

65. During Trupp's FMLA leave, Roche interfered with, restrained, or otherwise discriminated against Trupp, including but not limited to offering her job to another Roche employee.

66. During Trupp's FMLA leave, Roche interfered with, restrained, or otherwise discriminated against Trupp, including but not limited to Trupp's boss texting and emailing her ordering her to perform work while she was on approved medical leave.

67. Roche retaliated against Trupp for exercising her rights under the FMLA by taking FMLA leave and by filing this lawsuit.

68. Roche's retaliation included placing Trupp on paid administrative leave and demoting Trupp to a lesser position when returning her from leave.

69. Roche's unlawful actions were intentional, willful, and done in reckless disregard of Trupp's statutorily protected rights.

## IV. RELIEF REQUESTED

Trupp requests the following relief:

a. All wages and other economic benefits lost as a result of Roche's unlawful actions, including, but not limited to, two times the amount of back pay, front pay, employment related fringe benefits, and loss of future earning capacity;

b. Compensatory damages;

c. Special damages, including damages to compensate Trupp for mental anguish, pain and suffering, and emotional distress;

d. Liquidated damages and/or punitive damages;

e. All costs and reasonable attorneys' fees incurred in litigating this action;

f. Pre-judgment and post-judgment interest; and

g. Any and all other legal and/or equitable relief to which Trupp is entitled.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*_____
Kathleen A. DeLaney (#18604-49)
Christopher S. Stake (#27356-53)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205

*Attorneys for Plaintiff Robin Trupp*

## JURY DEMAND

Plaintiff, Robin Trupp, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Kathleen A. DeLaney*_____
Kathleen A. DeLaney (#18604-49)
Christopher S. Stake (#27356-53)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205

*Attorneys for Plaintiff Robin Trupp*

**CERTIFICATE OF SERVICE**

 I hereby certify that on the 11th day of January, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CMECF system.

 Patricia L. Ogden
 Kenneth J. Yerkes
 Hannesson I. Murphy
 Barnes & Thornburg LLP
 11 South Meridian Street
 Indianapolis, IN 4604
 Patricia.ogden@btlaw.com
 Ken.yerkes@btlaw.com
 Hannesson.murphy@btlaw.com

                */s/ Kathleen A. DeLaney*_____
                Kathleen A. DeLaney

DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN 46205