UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISON

| | | |
|---|---|---|
| ROBIN TRUPP, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO : l:18-cv-02587-SEB-DLP |
| v. | ) | |
| | ) | |
| ROCHE DIAGNOSTICS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendant, Roche Diagnostics Corporation ("Defendant" or "Roche"), by counsel, submits the following Answer to Plaintiff's First Amended Complaint and Demand for Jury Trial. This Answer is responsive to both the redacted Amended Complaint and the unredacted Amended Complaint, which has been sealed. [Exhibit 1 to Dkt. 29]. Defendant notes that for ease of future reference, the allegations of Plaintiff's Amended Complaint are set forth verbatim with Defendant's responses immediately following each allegation. Unless expressly admitted herein, all allegations of the Plaintiff's Amended Complaint are denied.

*First Defense*

## I.   PARTIES, VENUE, AND JURISDICTION

1.     Trupp is employed by Roche.

**ANSWER:**          Admitted.

2.     Roche is a domestic corporation incorporated under the laws of the State of Indiana and has its principal place of business in Indianapolis, Indiana.

**ANSWER:**          Admitted.

1

3.      This Court has subject matter jurisdiction over Trupp's claims pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 2601 *et seq.*, and 31 U.S.C. § 3721 *et seq.*

**ANSWER:**          Defendant admits that this Court has jurisdiction over Plaintiff's claims based on federal question jurisdiction, but Defendant denies that Plaintiff has any valid claims and denies that it is liable to Plaintiff in any way.  Defendant further denies any remaining allegations and/or implications contained in Paragraph 3 of Plaintiff's Amended Complaint.

4.      This Court has personal jurisdiction over Roche.

**ANSWER:**          Defendant admits that this Court has jurisdiction over Plaintiff's claims, but Defendant denies that Plaintiff has any valid claims and denies that it is liable to Plaintiff in any way.  Defendant further denies any remaining allegations and/or implications contained in Paragraph 4 of Plaintiff's Amended Complaint.

5.      Venue is proper pursuant to 28 U.S.C. § 1391 in that Roche is subject to personal jurisdiction in the Southern District of Indiana, Roche employs Trupp in the Southern District of Indiana, Roche regularly conducts business activities within the Southern District of Indiana, and a substantial part of the events giving rise to the claims occurred in the Southern District of Indiana.

**ANSWER:**          Defendant admits that venue is proper in this Court based on the allegations contained in Plaintiff's Amended Complaint.  Answering further, Defendant denies that it engaged in any conduct violating any of the statutes or laws identified in Plaintiff's Amended Complaint and denies any remaining allegations and/or implications contained in Paragraph 5 of Plaintiff's Amended Complaint.

## II.   FACTUAL ALLEGATIONS

6.      Trupp hereby incorporates by reference all other paragraphs of this Complaint as fully set forth here.

**ANSWER:**          Defendant adopts and incorporates by reference its responses to Paragraphs 1-5 of Plaintiff's Amended Complaint as if set forth fully herein.

7.      Roche is a manufacturer of medical devices which are sold and marketed under regulatory oversight from the United States Food and Drug Administration ("FDA").

**ANSWER:**          Defendant admits that it markets and sells medical devices which come under the regulatory oversight of the FDA.  Defendant denies any remaining allegations and/or implications contained in Paragraph 7 of Plaintiff's Amended Complaint.

8.      Roche manufactures medical laboratory devices and the associated immunoassays (blood tests) used by medical providers in the evaluation and management of cardiac diseases, including myocardial infarction (heart attack).

**ANSWER:**          Denied.

9.      Trupp obtained her Bachelor's Degree in Nursing from Miami University (OH), her Master's Degree in Nursing from the University of Cincinnati, and her Ph.D. in Nursing from The Ohio State University. She is board-certified as an Acute Care Nurse Practitioner by the American Nurses Credentialing Corporation and has received Fellowship status within the American Heart Association and the Heart Failure Society of America. She has over 40 years of clinical experience and expertise in managing adults with cardiac diseases in acute care and outpatient settings.

**ANSWER:**          Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of Plaintiff's Amended Complaint and therefore denies the same.

10.      From July of 2015 to August 31, 2018, Roche employed Trupp as the Director of Medical and Scientific Affairs, Cardiac.

**ANSWER:**          Denied.

11.     Before Roche placed Trupp on administrative leave, Trupp's role as Director of Medical and Scientific Affairs, Cardiac, included directing a team of 10 medical and scientific professionals, as well as being responsible for scientific engagements and medical education to hospitals and medical providers. Trupp managed an annual operating budget of ████ Trupp provided medical and scientific expertise for product development and subsequent product introduction into the U.S. market. Trupp served as the U.S. liaison to Roche's Global Clinical and Medical groups to identify and implement collaborative studies, regulatory activities and other programs.

**ANSWER:**          Defendant admits that as the Director of Medical and Scientific Affairs, Cardiac, Plaintiff supervised several employees, and that her department was responsible for scientific engagements and medical education to hospitals and medical providers.  Defendant further admits that Plaintiff's department had an annual budget roughly in the amount asserted in the Amended Complaint.  Defendant further admits that Plaintiff's department provided assistance with product introduction into the U.S. market, and that Plaintiff interacted with the Global Clinical and Medical groups in her role.  Defendant denies any remaining allegations or assertions contained in Paragraph 11 of Plaintiff's Amended Complaint.

12.     As Director of Medical and Scientific Affairs, Trupp reported directly to Dr. Chris Bird, Head of U.S. Medical & Scientific Affairs.  Bird reports to Dr. Alan Wright, Chief Medical Officer for Roche (U.S.).

**ANSWER:**          Admitted.

13.     In February of 2018, a Roche employee working under Trupp's supervision expressed potential concerns to Trupp about a Roche immunoassay.

4

**ANSWER:**          Defendant is without information sufficient to admit or deny the allegations in Paragraph 13 of Plaintiff's Amended Complaint and therefore denies the same.

14.    The assay, known as ████████████████, received clearance from the Food and Drug Administration ("FDA") in January 2017 for use on the Roche ████████ ████████████. Per the FDA 510k summary, █████████████████████████████ ████████████████████████████, as recommended by the most recent American Heart Association/American College of Cardiology heart attack guidelines.

**ANSWER:**          Admitted.

15.    The reported concern was that Roche was not being transparent about the fact that the      ████████████████████████████████████ ████████████████████

**ANSWER:**          Defendant denies the allegation contained in Paragraph 15 of Plaintiff's Amended Complaint as written as to the reported concern.

16.    The ████████████████████████████████████, which would change ████████████ as compared to ████████████████████████ ████████████. The ████████ are often different ████████████████, as compared to ████████████████.

**ANSWER:**          Defendant admits that the e411 is a two-step assay, without a prewash step and that the e601/e602 is a one-step assay with a prewash step.  Defendant denies any remaining allegations and/or implications contained in Paragraph 16 of Plaintiff's Amended Complaint.

17.     On February 9, 2018, Jane Phillips, the Senior Regulatory Program Manager for Roche, sent an email to Dr. Carmen Wiley (Regional Manager, Medical & Scientific Affairs), Dr. Ursula Klause (Sr. Scientific Affairs Manager, Medical & Scientific Affairs), Dr. Jonathan Respress (Medical & Scientific Liaison), and Joshua Soldo (Medical & Scientific Liaison), which stated in part, that ███████████████████████████████

**ANSWER:**          Defendant avers that the content of the referenced email speaks for itself and denies any remaining allegations and/or implications contained in Paragraph 17 of Plaintiff's Amended Complaint.

18.     Roche has communicated ████████████████████████████████ ███████████████████████ but Roche has not provided data to support that this is true and accurate, despite multiple requests from Trupp and her direct report over a span of months.

**ANSWER:**          Denied.

19.     Roche was aware that its customers were using the ████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████

**ANSWER:**          Denied.

20.     The differences in ███████████████████████████████ is

critical because the FDA has approved the assay for aiding in the diagnosis of a myocardial

infarction where measurements are made ████████████████████████████████

████████████████████████████████████████ The

differences in the measurements at these time intervals can aid in the diagnosis of myocardial

infarction. However, if the different ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ there may be an increased risk of missing a

diagnosis of myocardial infarction.

**ANSWER:**            Denied.

21.     Trupp recognized the significance and validity of these concerns, and she and her

direct report met with and communicated these concerns to Steve Oldham, Roche's Vice

President for Law & Ethics Compliance and General Counsel, on March 7, 2018.

**ANSWER:**            Defendant admits that Plaintiff and her direct report met with Steve

Oldham on or about March 7, 2018 to discuss concerns.   Defendant denies any remaining

allegations and/or implications contained in Paragraph 21 of Plaintiff's Amended Complaint.

22.     On March 14, 2018, Dr. Ursula Klause (Sr. Scientific Affairs Manager, Medical

& Scientific Affairs) sent an email to Joshua Soldo (Medical & Scientific Liaison), Jennifer

Evanczyk (Associate Marketing Manager), Jim Dodds (Technical Marketing Manager), and

Christen Mello (Group Marketing Manager) which stated in part:



████████████████████████████████

**ANSWER:**         Defendant avers that the content of the referenced email speaks for itself and denies any remaining allegations and/or implications contained in Paragraph 22 of Plaintiff's Amended Complaint.

23.     The majority of U.S. hospitals that have implemented Roche's assay are doing so in an "off-label" manner, ████████████████████████ ████ for reasons which are not medically necessary, when treating recipients of Medicare and/or Medicaid, and have accepted Medicare and/or Medicaid payments from the U.S. for such off-label use.

**ANSWER:**         Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of Plaintiff's Amended Complaint and denies the same.

24.     Trupp reported to Oldham that off-label use of the assay in question is the prevailing and growing utilization of the product.

**ANSWER:**         Defendant admits that Plaintiff opined to Mr. Oldham that off label use of the assay was growing in utilization of the product.  Defendant denies any remaining allegations and/or implications contained in Paragraph 24 of Plaintiff's Amended Complaint.

25.     During their meeting on March 7, 2018, Oldham informed Trupp and her colleague that they had done the right thing in reporting this issue and reassured them they would be protected from potential retaliation.

**ANSWER:**         Defendant admits Mr. Oldham thanked Plaintiff for bringing forward the concern and reiterated the Company's position that retaliation is prohibited against any employee who brings forward a good faith concern of any kind.  Defendant denies any

remaining allegations and/or implications contained in Paragraph 25 of Plaintiff's Amended Complaint.

26.     Later in the day on March 7, 2018, Trupp and her colleague had a meeting with Chief Medical Officer Wright, at Oldham's urging. Wright instructed Trupp to convene a small group to share the issue as soon as possible. When asked specifically about who should be invited, Wright stated that Regulatory Affairs need not be included because there were no regulatory concerns. This group meeting occurred on March 22, 2018, where Trupp and her direct report led the discussion and presented a PowerPoint presentation.

**ANSWER:**          Defendant admits that Plaintiff and her subordinate spoke with Dr. Wright on or about March 7, 2018 about an off label use concern, and that a follow-up meeting was scheduled for March 22, 2018.  Defendant further admits that Dr. Wright concurred with Plaintiff that the issue as raised did not involve the regulatory process.  Defendant denies any remaining allegations and/or implications contained in Paragraph 26 of Plaintiff's Amended Complaint.

27.     On March 29, 2018, Trupp received a phone call from Roche's Regulatory Affairs group, who falsely accused Trupp of accusing the Regulatory Affairs group of fraudulent activities with the FDA. Trupp immediately reported this call to Oldham.

**ANSWER:**          Defendant admits that following the March 22 meeting, Plaintiff indicated to Mr. Oldham that she had received a call from an individual in the regulatory affairs group who had reportedly received misinformation about the content of the March 22 meeting, and Plaintiff provided assurances to that individual that there were no regulatory concerns. Defendant denies any remaining allegations and/or implications contained in Paragraph 27 of Plaintiff's Amended Complaint.

28.     Beginning in April of 2018 and thereafter, Roche personnel repeatedly excluded Trupp from meetings, ignored her on conference calls and failed to respond to her emails. In those meetings which she did attend, colleagues ignored her, refused to respond when she spoke to them, raised their voices at her, and generally ostracized Trupp.  Bird repeatedly asked Trupp how she was going to "fix [her] problems with Regulatory Affairs."

**ANSWER:**          Denied.

29.     On April 18, 2018, Trupp complained to Oldham that Roche was retaliating against her. On April 27, 2018, Oldham initiated an internal investigation regarding Trupp's complaints of retaliation.

**ANSWER:**          Defendant admits that beginning in April 2018, the company began and subsequently conducted an investigation into concerns raised about potential retaliation to determine if any policy violations had occurred.  Defendant denies any remaining allegations and/or implications contained in Paragraph 29 of Plaintiff's Amended Complaint.

30.     On June 12, 2018, Roche notified Trupp that it had completed its internal investigation of Trupp's retaliation complaint and informed Trupp that although certain individuals had "definitely behaved badly," "no violation" of company policy had occurred.

**ANSWER:**          Defendant admits that on or about June 12, 2018, Plaintiff was informed that the investigation had been concluded and that the company was not able to substantiate any policy violations.   Defendant denies any remaining allegations and/or implications contained in Paragraph 30 of Plaintiff's Amended Complaint.

31.     The constant harassment and retaliation which occurred in the workplace made Trupp physically and emotionally ill, requiring medical leave for her serious medical condition. Trupp was on approved FMLA leave from July 9, 2018, through August 10, 2018.

**ANSWER:**          Denied.

32.    Trupp returned to work from FMLA on August 13, 2018.

**ANSWER:**          Admitted.

33.    On Trupp's first day back at work, Corinne Fantz, a director level colleague, informed Trupp that during Trupp's medical leave, Bird had asked Fantz if she wanted Trupp's job.

**ANSWER:**          Defendant has no knowledge of the facts asserted in Paragraph 33 of Plaintiff's Complaint and therefore denies the same.

34.    Trupp filed this lawsuit on August 22, 2018.

**ANSWER:**          Admitted.

35.    On August 22, 2018, at 10:48 a.m. Oldham sent an email confirming that he received an email message attaching a courtesy copy of Trupp's Complaint in this case.

**ANSWER:**          Denied.  Answering further, Defendant admits that Mr. Oldham sent an email acknowledging receipt of an email from Plaintiff's counsel enclosing a courtesy copy of Plaintiff's Complaint within a short time after receipt of the same.

36.    On or about August 31, 2018, Bird told Trupp that he had "received disturbing feedback" about Trupp from four Roche customers who had "specifically called out [Trupp's] behavior and attitude towards them."

**ANSWER:**          Denied as written.  Answering further, Defendant avers that the audio recording of the content of the referenced conversation, which Plaintiff recorded and produced, speaks for itself.

37.    On or about August 31, 2018, Bird told Trupp that Roche had "decided to put [Trupp] on administrative leave for the short term."

11

**ANSWER:**        Denied as written.  Answering further, Defendant avers that the audio recording of the content of the referenced conversation, which Plaintiff recorded and produced, speaks for itself.

38.    On August 31, 2018, Roche terminated Trupp's access to company email, company credit card, company travel account, disabled her company cell phone, and terminated all access to company files. Bird informed Roche employees via email that Trupp was on administrative leave and instructed them not to contact her.

**ANSWER:**        Defendant admits that after Plaintiff was placed on paid administrative leave, Defendant suspended access to email and at Plaintiff's request, Plaintiff's business phone.  Defendant further admits that appropriate Roche employees were informed that Plaintiff was on leave, that they should not contact her while on leave, and who would handle the work in the interim.  Defendant denies any remaining allegations and/or implications contained in Paragraph 38 of Plaintiff's Amended Complaint.

39.    On August 31, 2018, Roche deactivated Trupp's company email account such that anyone sending her an email message received a bounce back reply stating "[y]our message wasn't delivered to robin.trupp@roche.com because the address couldn't be found, or is unable to receive mail."

**ANSWER:**        Defendant admits that during the meeting in which Plaintiff was placed on paid administrative leave, she was requested to place an out of office message on her email.  Defendant further admits that it later learned that the IT department had inadvertently deactivated Plaintiff's email account prior to Plaintiff placing the out of office message on her email.  The issue was corrected.  Defendant denies any remaining allegations and/or implications contained within Paragraph 39 of Plaintiff's Amended Complaint.

40.    Roche kept Trupp on paid administrative leave from August 31, 2018, to December 3, 2018.

**ANSWER:**          Defendant admits that Plaintiff remained on paid administrative leave with full pay and benefits until December 3, 2018.  Defendant denies any remaining allegations and/or implications contained within Paragraph 40 of Plaintiff's Amended Complaint.

41.    During the entire period of paid administrative leave, Trupp had no work to perform, had no supervisory authority for her employees, could not communicate with co-workers, and was not allowed on company property.

**ANSWER:**          Defendant admits that while on paid administrative leave, Plaintiff was relieved of her work responsibilities and related communications with coworkers. Defendant denies any remaining allegations and/or implications contained within Paragraph 41 of Plaintiff's Amended Complaint.

42.    On or about November 14, 2018, Wright contacted Trupp about a potential job offer from Roche. Trupp spoke with Wright about this potential position on November 15, 2018.

**ANSWER:**          Admitted.

43.    Wright told Trupp on November 15, 2018, that the position had no job description, that it had not been posted, and that Trupp was the only person being considered for the role.

**ANSWER:**          Defendant admits that Dr. Wright informed Plaintiff that the position had not yet been posted and that he was currently considering her for the position. Defendant denies any remaining allegations and/or implications contained in Paragraph 43 of Plaintiff's Amended Complaint.

44.     Wright officially offered Trupp the position of "Director - Medical Access" on November 16, 2018.

**ANSWER:**          Admitted.

45.     The position of "Director - Medical Access" is a newly created position.

**ANSWER:**          Admitted.

46.     According to Roche's Employment Policy, Internal Job Posting, "[t]o be eligible to apply for an open position, an employee must...not currently [be] on any form of written counseling or Performance Improvement Plan."

**ANSWER:**          Denied as written.   Answering further, Defendant avers that the language of the policy speaks for itself.

47.     Wright told Trupp on November 15, 2018 that she was not on a Performance Improvement Plan; otherwise she wouldn't be eligible for the job offer. Wright said it was a "clean slate solution to get [Trupp] out of global affiliate dynamic issues."

**ANSWER:**          Defendant admits that Dr. Wright confirmed that Plaintiff was not on a performance improvement plan, and that the opportunity presented offered her the opportunity for a clean slate or words to that effect.  Defendant further admits that Dr. Wright discussed the challenges that Plaintiff had in her working relationships with the global team during the call.   Defendant denies any remaining allegations and/or implications contained within Paragraph 47 of Plaintiff's Amended Complaint.

48.     Roche did not follow its Internal Job Posting policy stating "all jobs below the VP level are posted internally" and "should be posted for a minimum of five days."

**ANSWER:**          Denied.

49.     Wright represented to Trupp that the position of "Director - Medical Access" was part of Medical and Scientific Affairs and would be at the same level as her prior position.

**ANSWER:**          Denied.   Answering further, Dr. Wright did confirm that the position was also a director level position but reporting directly to him.   Defendant denies any remaining allegations and/or implications contained within Paragraph 49 of Plaintiff's Amended Complaint.

50.     The position of Director - Medical Access has no direct reports.

**ANSWER:**          Defendant admits that the position of Director-Medical Access currently has no direct reports.

51.     Trupp accepted the position of Director - Medical Access on November 30, 2018. Trupp's assignment to this position began on December 3, 2018.

**ANSWER:**          Admitted.

52.     Since returning to work, Trupp has been instructed to work in a different area, isolated from her colleagues.

**ANSWER:**          Denied.

53.     Since Trupp's return to work, Trupp's colleagues have told her that they have been instructed not to talk to her.

**ANSWER:**          Defendant has no knowledge of what Trupp's unnamed "colleagues" told her and therefore denies the same.

54.     Since returning to work, Roche has continued to exclude Trupp from Medical and Scientific Affairs meetings and activities.

**ANSWER:**          Denied.  Answering further, Plaintiff is included in any meeting or activity that relates to her current position.

55.     The position of Director - Medical Access is not substantially equivalent to her prior position of Director of Medical and Scientific Affairs, Cardiac because, among other things, it has no direct reports, no budget, no liaison role, and has significantly diminished job duties and responsibilities.

**ANSWER:**          Denied.

### III.   LEGAL ALLEGATIONS

### COUNT I: FALSE CLAIMS ACT RETALIATION

56.     Trupp hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here.

**ANSWER:**          Defendant adopts and incorporates by reference its responses to Paragraphs 1-55 of Plaintiff's Amended Complaint as if set forth fully herein.

57.     Trupp engaged in protected activity through her efforts to stop one or more violations of the False Claims Act, including, but not limited to, her internal reporting of concerns related to off-label use of regulated medical devices to Oldham on March 7, 2018, and in follow up meetings, email communications and telephone calls up to and including the time of this filing. Trupp further engaged in protected activity by filing this lawsuit on August 22, 2018.

**ANSWER:**          Denied. Answering further, Defendant admits that Plaintiff filed this lawsuit on August 22, 2018.

58.     Roche was aware of Trupp's protected activities and the company's lead in house lawyer personally assured her that she would be protected from retaliation.

**ANSWER:**          Defendant admits that Mr. Oldham thanked Plaintiff for bringing forward a concern about off-label use and reiterated the Company's position that retaliation is prohibited against any employee who brings forward a good faith concern of any kind.

Defendant denies any remaining allegations and/or implications contained in Paragraph 58 of Plaintiff's Amended Complaint.

59.     Trupp has suffered adverse employment actions, including, but not limited to, harassment, threats to demote or terminate her employment, reassignment of responsibilities and duties away from her, placement on administrative leave, demotion to a lesser position after being returned from administrative leave, and other retaliation adversely affecting the terms and conditions of her employment.

**ANSWER:**         Denied.

60.     A causal connection exists between Trupp's protected activities and Roche's adverse employment actions against her.

**ANSWER:**         Denied.

61.     Trupp has suffered damages as a result of Roche's retaliation.

**ANSWER:**         Denied.

**COUNT II: FMLA RETALIATION**

62.     Trupp hereby incorporates by reference all other paragraphs of this Complaint as fully set forth here.

**ANSWER:**         Defendant adopts and incorporates by reference its responses to Paragraphs 1-61 of Plaintiff's Amended Complaint as if set forth fully herein.

63.     Trupp engaged in protected activity under the FMLA by applying for and obtaining medical leave under the FMLA. Trupp further engaged in protected activity by filing this lawsuit on August 22, 2018.

**ANSWER:**         Defendant admits that Plaintiff sought and was provided FMLA leave and that Plaintiff filed this lawsuit on August 22, 2018. Defendant denies any remaining allegations and/or implications contained in Paragraph 63 of Plaintiff's Amended Complaint.

64.     Roche was aware of Trupp's exercise of her FMLA rights.

**ANSWER:**          Defendant admits that it provided Plaintiff the requested leave. Defendant denies any remaining allegations and/or implications contained in Paragraph 64 of Plaintiff's Amended Complaint.

65.     During Trupp's FMLA leave, Roche interfered with, restrained, or otherwise discriminated against Trupp, including but not limited to offering her job to another Roche employee.

**ANSWER:**          Denied.

66.     During Trupp's FMLA leave, Roche interfered with, restrained, or otherwise discriminated against Trupp, including but not limited to Trupp's boss texting and emailing her ordering her to perform work while she was on approved medical leave.

**ANSWER:**          Denied.

67.     Roche retaliated against Trupp for exercising her rights under the FMLA by taking FMLA leave and by filing this lawsuit.

**ANSWER:**          Denied.

68.     Roche's retaliation included placing Trupp on paid administrative leave and demoting Trupp to a lesser position when returning her from leave.

**ANSWER:**          Denied.

69.     Roche's unlawful actions were intentional, willful, and done in reckless disregard of Trupp's statutorily protected rights.

**ANSWER:**          Denied.

## IV.   RELIEF REQUESTED

Trupp requests the following relief:

a.      All wages and other economic benefits lost as a result of Roche's unlawful actions, including, but not limited to, two times the amount of back pay, front pay, employment related fringe benefits, and loss of future earning capacity;

**ANSWER:**          Defendant admits that Plaintiff is seeking the requested relief, but Defendant denies it has violated any law and denies it is liable to Plaintiff in any way, at equity or at law.

b.      Compensatory damages;

**ANSWER:**          Defendant admits that Plaintiff is seeking the requested relief, but Defendant denies it has violated any law and denies it is liable to Plaintiff in any way, at equity or at law.

c.      Special damages, including damages to compensate Trupp for mental anguish, pain and suffering, and emotional distress;

**ANSWER:**          Defendant admits that Plaintiff is seeking the requested relief, but Defendant denies it has violated any law and denies it is liable to Plaintiff in any way, at equity or at law.

d.      Liquidated damages and/or punitive damages;

**ANSWER:**          Defendant admits that Plaintiff is seeking the requested relief, but Defendant denies it has violated any law and denies it is liable to Plaintiff in any way, at equity or at law.

e.      All costs and reasonable attorneys' fees incurred in litigating this action;

**ANSWER:**          Defendant admits that Plaintiff is seeking the requested relief, but Defendant denies it has violated any law and denies it is liable to Plaintiff in any way, at equity or at law.

f.      Pre-judgment and post-judgment interest; and

**ANSWER:**          Defendant admits that Plaintiff is seeking the requested relief, but Defendant denies it has violated any law and denies it is liable to Plaintiff in any way, at equity or at law.

g.      Any and all other legal and/or equitable relief to which Trupp is entitled.

**ANSWER:**          Defendant admits that Plaintiff is seeking the requested relief, but Defendant denies it has violated any law and denies it is liable to Plaintiff in any way, at equity or at law.

### JURY DEMAND

Plaintiff, Robin Trupp, by counsel, hereby demands a trial by jury on all issues so triable.

**ANSWER:**          Defendant objects to a jury determination of any equitable issues in this action or any other issues not triable by a jury.

### *Second Defense*

To the extent that an answer or response may be required which is not set forth herein, Defendant generally denies any allegations contained within Plaintiff's Amended Complaint not expressly admitted.

### *Third Defense*

Subject to a reasonable opportunity for investigation and discovery, some of Plaintiff's claims may be barred by the doctrine of after-acquired evidence.

### *Fourth Defense*

Subject to a reasonable opportunity for investigation and discovery, Plaintiff has failed to mitigate her alleged damages.

### Fifth Defense

Plaintiff's damages are barred or limited by the U.S. Constitution, the Indiana Constitution, the FMLA, the False Claims Act, 31 U.S.C. § 3729 *et seq*., and all other applicable federal and/or state laws.

### Sixth Defense

Subject to a reasonable opportunity to conduct discovery, some or all of Plaintiff's claims are barred by the applicable statutes of limitations.

### Seventh Defense

Plaintiff's Complaint fails to state one or more claims upon which relief can be granted.

### Eighth Defense

Any request by Plaintiff for liquidated damages is barred or otherwise limited by Defendant's good faith efforts to comply with applicable laws.

### Ninth Defense

Subject to a reasonable opportunity to conduct discovery, some or all of Plaintiff's claims may be barred by the doctrines of waiver, estoppel and/or unclean hands.

### Tenth Defense

To the extent Plaintiff seeks a jury trial, this request is barred to the extent that it relates to equitable remedies or issues not triable to a jury.

### Eleventh Defense

Defendant is entitled to attorneys' fees and other costs associated with the defense of this action on grounds that this action is frivolous, unreasonable, and groundless.

### *Twelfth Defense*

Defendant exercised good faith to comply with all applicable laws.

### *Thirteenth Defense*

Defendant's actions as they related to Plaintiff were based on non-retaliatory, legitimate business reasons not related to any purported retaliation as to Plaintiff or for any other unlawful basis.

### *Reservation of Rights*

Defendant reserves the right to assert additional affirmative defenses as Plaintiff's claims are clarified during the course of this litigation.

WHEREFORE, Defendant respectfully requests the Plaintiff take nothing by way of her Complaint that this matter be dismissed in its entirety, that judgment be entered in Defendant's favor, that Defendant be awarded the costs incurred in its defense of this matter, and that Defendant be granted all other relief deemed necessary and appropriate by the Court.

Respectfully submitted,

*s/ Patricia L. Ogden*
Kenneth J. Yerkes (Atty. No. 2084-49)
Patricia L. Ogden (Atty No. 19509-48)
Hannesson I. Murphy (Atty No. 25993-49)
Koryn M. McHone (Atty. No. 25008-49)
**Barnes & Thornburg LLP**
11 South Meridian Street
Indianapolis IN  46204
Telephone:     (317) 236-1313
Facsimile:     (317) 231-7433
Email:         ken.yerkes@btlaw.com
               patricia.ogden@btlaw.com
               hannesson.murphy@btlaw.com
               kmchone@btlaw.com

Attorneys for Roche Diagnostics Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of January, 2019, a copy of the foregoing was filed electronically.   Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

Kathleen A. DeLaney
Christopher S. Stake
DeLaney & DeLaney LLC
3646 Washington Blvd.
Indianapolis, IN  46205


*s/ Patricia L. Ogden*
Patricia L. Ogden

13852292v1

23